Matthew Charles Schlobohm
710 N. 7th St.
Kansas City KS 66101

United States District Court for Kansas

Motions for Leave to Amend Complaint; Emergency Review

MATTHEW CHARLES SCHLOBOHM, plaintiff
v.
Donald Ash, et al, defendants

Sunday, January 15, 2023

FILED
U.S. District Court
District of Kansas

JAN 19 2023

Clerk, U.S. District Court
By _____ Deputy Clerk

Plaintiff seeks leave to amend his complaint as follows:

1. Definitions: upon information and belief...
2. P.C. = protective custody
3. loperamide = an anti-diarrheal OTC medicine
4. Glubinski = disgraced (Wyandotte County Sheriff's) (Kansas City Kansas Police) Department employee; Detective + Sgt.
5. Glubinski (cont) = who engaged in pervasive, sustained, corrupt and fundamentally immoral + illegal acts for decades against innocent person(s) -- allegedly.
6. Glubinski'd = a verb; the act of corruptly, intentionally and illegally undertaking subversive and covert action under the color of state law meant to cover up the official's malicious, corrupt, immoral + purely selfish motivations and behavior(s) by presenting an artificial air of the same upon the victim of said behavior. (Also called "the Glubinski treatment.")
7. An example, hypothetically, may include the act of a deputy or other jail staff member covertly planting exactly the type of evidence needed to exonerate the deputy from a lawsuit to which they are a party, but for which the deputy only came to know of the forceful needed evidence through the illegal act of the deputy or a cohort opening the privileged mail of an inmate, and then tampering with records + spreading lies to his cohort to ostensibly protect himself from culpability.

Plaintiff asks to add the following defendants:

8. Defendant Karina Purcell, nurse, WCADC, employee of Wellpath; from Kansas City KS; at all times was acting under the color of state law; sued individually + in official capacity.
9. Defendant Ms. Taylor, Acting Captain + C.O., WyCo So; from "KCK" (Kansas City KS); at all times was acting under the color of state law. Sued individually + in official capacity.
10. Defendant Mr. Bond, booking officer, WyCo So; from KCK; at all times acted under the color of state law; sued individually + in his official capacity.
11. Defendant Ms. D.D., RN + HSA, Wellpath, WCADC; from KCK. At all times was acting under the color of state law; she is sued individually and in her official capacity.

12. Defendant Esmerelda W., programs supervisor, WCADC, Kansas City KS, at all times acted under the color of state law; sued individually + in her official capacity.

13. Defendant Ms. Reid, deputy + C.O., WyGso, WCADC, from KCK; at all times acted under the color of state law; sued individually and in her official capacity.

14. Defendant Unknown Named Deputy on duty in I pod during the afternoon of Saturday, January 14, 2023; deputy, WCADC, WyCoSo, from KCK; at all times acted under the color of state law; sued individually and in his official capacity. (AKA, "C.O. XX")

15. Defendant Two Inmate Kitchen Workers who delivered food trays to I pod during lunch on Saturday, January 14, 2023. From KCK. During this time period they acted under the color of state law as inmate workers who followed directives of CCS, Ms. Hill, defendants; sued individually and in their official capacities.

Plaintiff asks to add to the existing cause of action the following (upon information and belief):

16. Cause of Action - Count III - Deliberate Indifference, violation of Eighth Am.; Due Process, 14th Am.; Equal Protection, 14th; Cruel + Unusual punishment, Eighth Am.

17. Supporting Facts:

18. Plaintiff tested negative for COVID-19, "a respiratory illness caused by a newly identified coronavirus, SARS-CoV-2," according to EXHIBIT A-A-1, a notification of COVID-19 lab result from Defendants Wellpath, Karina Purcell and nursing staff, dated 12/13/22 and signed by Defendant Purcell on 12/14/22.

19. Less than a week later, plaintiff tested positive for COVID-19, according to the same lab result from defendants Wellpath, Purcell and nursing staff.

20. "Symptoms of COVID-19 include cough, fever or chills, shortness of breath or difficulty breathing, muscles or body aches, sore throat, new loss of taste or smell, diarrhea, headache, fatigue, and nausea and vomiting," quoting the "COVID Lab Result Notification" (Exhibit A-A-1) from defendants.

21. "COVID-19 can be severe, and in some cases result in death." (Exhibit A-A-1)

22. Plaintiff informed Defendant Meador on 12/21/22 that he was experiencing every single symptom listed of COVID-19. Meador refused to call medical and instead replied, "Here you go again?"

23. Plaintiff informed Defendant Nursing Staff on her rounds that evening but no help or evaluation let alone treatment was provided to plaintiff.

24. Plaintiff has submitted likely dozens of LCF's (Inmate Communication Forms) and sick call requests to defendants Wellpath, Purcell, D.D. and Nursing Staff but they took no prudent, reasonable, humane or even basic actions to provide medical care for plaintiff's serious, ongoing medical needs. Defendants merely kept doing what they had allowed to happen and made no acknowledgement of plaintiff's positive COVID-19 test result again after covertly sliding an unsigned notification of positive lab result under plaintiff's door on 12/23/22.

25. As of today, Monday, January 16, 2023, Defendants Nursing Staff, Purcell, D.D. and Wellpath lie to plaintiff's face about his medical records (which they misrepresent, such as when Defendant Nursing Staff mystifyingly and fraudulently told plaintiff that the medical blood test result that clearly read "XBB," a variant of COVID-19, was actually a new term that defendant coined for the Hepatitis-C -- also contracted by plaintiff while in custody at WCADC -- strain affecting plaintiff) while also falsifying medical records by tampering with medical equipment to give the impression that plaintiff is totally healthy & not suffering from the serious, life-threatening illness that their own blood test results say he is suffering from.

26. On or around Jan. 5, 2023, plaintiff went to the medical unit for what he was told was a sick call. It was not. What did happen, however, was nothing short of medical negligence, medical malpractice and fraud.

27. Defendant Nursing Staff tampered with the digital scale to make it seem as though plaintiff was somehow gaining weight despite suffering from COVID-19, diarrhea four times a day and being on a liquid diet. Defendant also falsified plaintiff's blood pressure -- plaintiff held his wrist while the defendant ineptly used the cuff. Plaintiff, and I agree, calculated about 160 over 110. Attendant marked 117 over 78. Utterly impossible.

28. On 1/14/23 at 4:10pm, Defendants Wellpath, D.D., and nursing staff had plaintiff ostensibly moved to the dreaded "I pod," which is "medical observation." Really, it's what is known as the Medical Glubinski Treatment for similarly situated inmates to plaintiff.

29. Absolutely no legitimate, important or compelling objective is achieved through such flagrantly vengeful actions that are repugnant to the conscience of mankind. No medical care has been undertaken. It's merely a superficial ruse meant to punish and dehumanize and exact revenge on plaintiff for the filing of grievances, this civil action (which Defendant Ms. Hill illegally opened, photocopied and distributed to Defendants Ash, Fewell and others on or around Jan. 6, 2023) and for their hatred of plaintiff's immutable traits (being Jewish and gay and disabled).

30. Plaintiff was moved on 1/15/23 to Intake — an even more de-humanizing setting meant to humiliate plaintiff as well as to cut off plaintiff from ICFs, the kiosk, other inmates + potential witnesses, and, most importantly, a law library because there is no accessible Wi-Fi here.

31. Plaintiff begged for P.C. from Defendants Redd, Taylor (see Exhibit H-I) and Bond. Instead, they mocked + harassed plaintiff for the way he walks + talks, and, as they covered up the "window" on the door of his otherwise windowless, airless, noxious-smelling, especially tiny cell, Defendant Redd said, "You want P.C.? We'll give you P.C.!" as they sealed me in. They then refused to give me toilet paper three times between 1pm + 4pm. They knew I had covid + diarrhea.

32. No medical treatment has been provided. No evaluation. No observation by medical staff. I specifically asked for help be of the poisonous chemical smell, but they refused to provide.

33. Plaintiff has been denied any rec time since 12/5/22 other than four days before being transferred to I pod -- and after Defendant Esmerelda V. and Defendant Ms. Hill opened + photocopied my sealed legal/privileged mail containing this civil action.

34. Defendants Ms. Hill, Ms. T, D.D., two unnamed inmate workers, and Fewell conspired and did violate plaintiff's right to a religious diet by secretly fabricating a specious reasoning to deny plaintiff the kosher diet ex post facto; they also put loperamide in my food to make my covid diarrhea turn into constipation and thus make me appear to gain weight. I caught them adding the loperamide to my lunch tray outside "I pod" on Saturday, Jan. 14.

35. Also on lunch on 1/14/23, I was served a styrofoam tray that was uniquely marked so the C.O. would know to give it to me. It had flies in it -- including pupae.

36. I attest that everything heretofore is true to the best of my knowledge under penalty of perjury.

37. I beg the court for emergency review.

38. Defendants are fully capable of repetition, but evading review. They do this regularly.

39. "The Glubinski Treatment."

40. For this count, I seek a ruling that my civil rights have been violated.

41. I also seek compensatory + punitive damages in whatever amount the court deems fit in the interest of justice but in any event no less than $150,000 per defendant per incident or $900,000, as well as my medical + psychiatric insurance + care paid for by Wellpath for the rest of my life or a lump sum of $5,000,000. Signed,

1/16/23                                    [signature]
                                            Plaintiff