**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**MATTHEW CHARLES SCHLOBOHM,**

     **Plaintiff,**

     **v.**                        **CASE NO.  23-3014-JWL**

**DONALD ASH, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff Matthew Charles Schlobohm brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is granted provisional leave to proceed *in forma pauperis*. Plaintiff is detained at the Wyandotte County Adult Detention Center ("WCADC") in Kansas City, Kansas. For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.

**I.  Nature of the Matter before the Court**

In Count I of the Complaint (Doc. 1), Plaintiff alleges that despite "exhaustively" going over his "extensive" medical and psychiatric history with nursing staff upon intake, he has received "no adequate treatment for any existing medical or psychiatric conditions." Doc. 1, at 5-6. Plaintiff further claims that he requested a COVID-19 vaccination upon intake but did not receive one. He goes on to assert that he felt particularly sick on December 21, 2022. He sought emergency care on multiple occasions throughout that day and every day until the day he prepared his Complaint (January 3, 2023), but "no treatment was provided or need assessed." *Id.* at 6. Plaintiff also states that on December 23, 2022, he received a positive COVID-19 test result.

1

Plaintiff claims the nursing staff fabricated, falsified, and backdated Inmate Communication Forms ("ICFs") and sick call requests to "give the impression" that they actually saw him.  Plaintiff states that as of January 3, 2023, he had received "only seldom" doses of zinc and vitamin D supplements and 3-days of Tylenol, "which is contraindicated due to his Hep C which he also acquired while in custody of the WCADC," and two doses of Mucinex.  In connection with these allegations, Plaintiff alleges violation of the Fourteenth Amendment, the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Affordable Care Act ("ACA") of 2009, the Rehabilitation Act of 1973, the First Amendment, and the Fifth Amendment.

Count II of the Complaint alleges interference with Plaintiff's religious freedom.  Plaintiff states that he is Jewish and was "explicitly denied his multiple requests to practice his religion in any way."  *Id*. at 5.  He claims that "Miss Hill and Defendant Fewell knowingly, maliciously, and with corrupt intent and motive began Plaintiff on the Kosher diet for a few days only to surreptitiously remove Plaintiff from the Kosher diet without informing Plaintiff in any way."  *Id*. at 7.  Plaintiff alleges that this required the "collusion" of Miss Hill, nursing staff, Programs staff, Major Patrick, Deputy Meador, and Deputy Ramirez, "with guidance and training provided by Sheriff Ash."  *Id*.  When Plaintiff discovered on December 31, 2022, that he was not receiving a kosher diet, he protested to Defendant Meador and wrote grievances addressed to Programs and Medical.  He refused meal service on January 1, 2023, and complained to Defendant Ramirez.  Ramirez told Plaintiff to lockdown and made no effort to obtain a suitable meal for him.  Plaintiff states that he informed the nursing staff when they "came to check my INR at 1 p.m."  *Id*.  He further alleges that he requested use of the kiosk to file a grievance and written ICFs, but Ramirez denied his requests and refused to answer his intercom calls.

Plaintiff alleges that Defendant Ramirez "at all times, acts in overtly hostile and disrespectful ways" toward him and treats him "drastically, intentionally and sadistically worse than similarly situated inmates due to Plaintiff's sexual orientation." *Id*. at 8.  Plaintiff then goes on to say that such treatment by Ramirez and the nursing staff is in "retaliation for Plaintiff's filing of grievances and civil actions." *Id*. at 9.  He alleges the nursing staff threatened him that if he kept placing sick calls, they would make sure Plaintiff's jail employment "would be a no." *Id*. Plaintiff further states that "[t]o this day Plaintiff has not received any medical care due to the retaliation he continues to experience." *Id.*

Plaintiff states that the Programs staff, Defendant Lyons, and Defendant Miss Hill "concocted a specious excuse as to why Plaintiff was 'mysteriously' . . . switched from Kosher to non-Kosher." *Id*.

Plaintiff alleges that the described conduct violated his First, Fifth, Eight, and Fourteenth Amendment rights, the RLUIPA, the Equal Protection Clause, and the Due Process Clauses of the Eighth and Fourteenth Amendments.

Last, as Count III, Plaintiff claims that he has been on 24-hour lockdown since he arrived at WCADC on December 4, 2022, and every day of his confinement despite his minimum security classification.  He asserts that this violates his rights under the Due Process Clauses of the Eighth, and Fourteenth Amendments, the Equal Protection Clause, and the First and Fifth Amendments.

Plaintiff names the following defendants: Donald Ash, Sheriff of Wyandotte County, Kansas; FNU Fewell, Administrator of the WCADC; FNU Meador, Correctional Officer ("CO") at the WCADC; FNU Ramirez, CO at the WCADC; the nursing staff at the WCADC, employed by Wellpath; the Programs staff at the WCADC; Miss T, commissary manager at the WCADC, employed by Aramark; Miss Hill, administrator of the kitchen at the WCADC, employed by

Correct Care Solutions; the Wellpath Medical Care Team; Danny LNU, doctor at WCADC, employed by Wellpath; and FNU Lyons, CO at the WCADC.

Plaintiff seeks the following relief: an injunction to force the defendants to give Plaintiff his prescription medicine immediately; to provide him with a typewriter since his medical conditions make it difficult for him to write by hand; to provide him with a kosher diet with healthy, whole foods based on a varied, flavorful menu consisting of 3,000 calories per day; to send him to the University of Kansas Hospital Emergency Department for proper treatment of COVID and any other medical issue for as long as is necessary; to allow Plaintiff to text and email anyone for free without undue restriction, 24 hours a day, 7 days a week; to require commissary items to cost no more than 125% of the MSRP; to add a function on the facility tablets that will initiate an emergency due process hearing based on factors entered by the inmate, which must be handled within one hour by the WCADC or else any involved staff will be held in contempt of court; and to ban the policy of discriminating against the disabled, Jews, gays, or anyone else of protected status. Plaintiff further seeks a declaratory judgment that his civil rights have been violated and compensatory and punitive damages of not less than $500,000.

Plaintiff attaches to his Complaint sixteen (16) ICFs. On December 5, 2022, Plaintiff asked to be removed from the gluten and dairy allergies diet, saying he had changed his mind and wanted to be on the standard menu. He also asked for double trays. On December 6, 2022, he complained about the nursing staff. On December 9, 2022, he said he wanted his prescriptions and telehealth visits with his personal doctors if the WCADC doctor is "unable or incapable or unwilling to provide treatment." Doc. 1-1, at 3. He refers to a requirement for 60 days of medication sobriety as a specious, artificial obstruction. *Id.* Also on December 9, 2022, he requested a typewriter, 24-hour, 7-day a week access to a tablet, and his prescribed medications. On December 11, 2022, he

requested to be taken off the special diet tray.  He explains this referred to a gluten and dairy allergies diet.  He asserts in the ICF that he is being punished by keeping him on this diet (even though he initially asked to receive this diet).  On December 10, 2022, he stated that he required a special razor, face wash, and lotion due to his blood-clotting disorder.  On December 13, 2022, he stated that he was ready to work.  Also on December 13, 2022, he requested a typewriter, constant access to a tablet, and a hard copy of the Jailhouse Lawyer's Manual.  On December 14, 2022, he requested a mattress of at least 6-inch thickness and a well-balanced diet.  Also on December 14, 2022, he requested a regular tablet, a typewriter, a hard copy of the Jailhouse Lawyer's Manual, a notary stamp, and his medication.  On December 15, 2022, he sent an ICF to Court Services complaining about his appointed counsel.  Also on December 15, 2022, he complained about a nurse and an HIV/AIDS document that he states he was forced to sign without reading it.  He demands to be hired at once.  On January 2, 2023, he asked about care packages purchased by his brother, which he accused Miss T of stealing.  On January 3, 2023, he again complained about the care packages and Miss T.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and

*Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

After reviewing Plaintiff's Complaint, the Court finds that the Complaint is subject to dismissal for the following reasons.

### A. Improper Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted) (emphasis added); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Plaintiff names three defendants that are not "persons": the nursing staff at the WCADC, the Programs staff at the WCADC, and the Wellpath Medical Care Team. This action is subject to dismissal as against these defendants because each is not a "person" suable under § 1983.

### B. Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

Plaintiff does not allege facts showing the personal participation of each named defendant in the alleged constitutional violations.  Plaintiff's Complaint frequently uses either the collective term "defendants" or one of the "group" defendants with no distinction as to what acts are attributable to which individual, making it "impossible for any of these individuals" as well as the Court "to ascertain what particular unconstitutional acts" each is alleged to have committed.  *See Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).  The Supreme Court has criticized complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies."  *Twombly*, 550 U.S. at 565, n. 10.  Plaintiff fails to clearly "isolate the allegedly unconstitutional acts of each defendant."  *See id*.

## C.  Medical Care

Plaintiff raises two primary claims related to the medical care at the WCADC.  He generally asserts that he has received "no adequate treatment for any existing medical or psychiatric conditions," and he takes issue with the care he is receiving for COVID-19.

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs."  *Crowson v. Wash. Cty.*, 983 F.3d 1166, 1178 (10th Cir. 2020) (internal quotation marks and citation omitted). The two-part Eighth Amendment inquiry governs. *Id.* Objectively, the deprivation must be sufficiently serious to constitute a deprivation of a constitutional dimension; and subjectively, a prison official must know of and disregard an excessive risk to inmate health or safety. *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

Plaintiff fails to state an actionable claim based on medical care in the Complaint.  He makes many broad, conclusory statements but includes little in the way of specific facts.  He complains that he has not received treatment for serious health conditions but never explains what

those conditions are or the medications he was prescribed by outside doctors, making it impossible to determine the seriousness of his claims.  Also, despite his claims that he has received no treatment, at one point he mentions that the nursing staff came to his cell to check his INR (the time it takes for blood to clot; typically used to monitor blood-thinning medicines), something that is at odds with his claim.  Intentionally interfering with prescribed treatment can constitute deliberate indifference (*see Estelle v. Gamble*, 429 U.S. 97, 105 (1976)), but Plaintiff has not yet provided enough facts to state a claim.

Plaintiff's allegations related to COVID are conclusory and inconsistent as well.  Despite his claim that he was not assessed and received no treatment for COVID, he was tested by someone and states that he received at least some treatment.  In addition, Plaintiff asserts that he needs immediate transfer to the hospital, but he does not describe his physical condition or symptoms and does not explain what care he thinks he needs and would receive at the hospital.

In addition to claiming violation of his Fourteenth Amendment rights, Plaintiff mentions the ADA.  The ADA prohibits discrimination by government entities on the basis of disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim for a violation of the ADA, a plaintiff must allege he is disabled within the meaning of the ADA, he has been excluded from participation in a public entity's services or programs, and that exclusion was because of his disability.  *Robertson v. Las Animas County Sheriff's Dept.*, 500 F. 3d 1185, 1193 (10th Cir. 2007).

Plaintiff's allegations do not fit within the ADA framework because he is not claiming he was denied treatment or services *because of* his alleged disability.  Rather, he is claiming he was

denied services *for* his disability.  *See Rosado v. Alameida*, No. CIV.03CV111OJ (LSP), 2005 WL 892120, at *3 (S.D. Cal. Feb. 8, 2005).  While disabled persons are entitled to reasonable accommodation during incarceration (*Robertson.*, 500 F. 3d at 1198), the Tenth Circuit has found that the ADA does not generally provide an avenue for prisoners to challenge medical care. *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012); *Breedlove v. Costner*, 405 F. App'x 338, 341 (10th Cir. 2010). Failure to provide medical treatment the inmate desires is not actionable under the ADA.  *Nasious*, 495 F. App'x at 902; *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (stating the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.  No discrimination is alleged; [plaintiff] was not treated worse because he was disabled. . . The ADA does not create a remedy for medical malpractice.").  Thus, Plaintiff fails to state a viable claim under the ADA.

### D.  Segregation/Classification

Plaintiff claims in Count III that he should not have been assigned to segregation at the WCADC.  An inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or place of confinement.  *See Wilkinson v. Austin*, 545 U.S. 209, 221–222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976); *Montayne*, 427 U.S. at 243; *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).  Indeed, inmates have "no legitimate statutory or constitutional entitlement" even if the classification would cause that inmate to suffer a "grievous loss."  *Id.*  Instead, the custody classification of prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."  *Meachum*, 427 U.S. at 225.

Thus, an inmate's placement in administrative segregation is a classification matter that is purely within the discretion of prison officials, and generally not reviewable in federal court.  See *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  Segregation is not limited to instances of punishment but may be imposed for administrative purposes.  Administrative segregation implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

Plaintiff's claim regarding his placement at the WCADC is subject to dismissal for failure to state a claim.  Plaintiff complains about placement in segregation.  This allegation, standing alone, does not present a federal constitutional violation.  Moreover, Plaintiff does not name a particular defendant as the person who actually ordered his placement on a particular date and describe that person's wrongful acts.  Further, Plaintiff has not sufficiently described such extreme conditions or restrictions, dates of duration, and adverse impacts to show they were atypical and significant deprivations warranting due process protections.

**E.  Religious Freedom**

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir. 2012); *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205 (10th Cir. 1999).  In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs."  *Gallagher*, 587 F.3d at 1069.  In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."  *Id.* at 1070.  "If the prisoner satisfies this initial step, 'defendants

may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley*, 493 F. App'x at 932 (citation omitted).  The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.*  The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010)).  In *Strope*, the Tenth Circuit reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id.* at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim).  We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321).  In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

Plaintiff's claim of denial of the right to freely practice his religion is subject to dismissal for failure to allege adequate facts in support.  The threshold consideration with a free exercise claim under the First Amendment is whether Plaintiff's belief is "sincerely held" and "religious in

nature." *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (*citing DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)). Plaintiff has included no allegation that his Jewish beliefs are sincerely held and religious in nature, nor does he include any facts from which such belief can be inferred.

Furthermore, based on the Complaint and attachments, Plaintiff initially requested to be placed on a gluten and dairy-free diet. At some point, he asked to switch to a regular diet. Plaintiff does not state when he requested a kosher diet. He then admits that he received kosher trays for some period of time before being switched to non-kosher. As he had only been at the WCADC for about a month when he filed this lawsuit, it is not clear that the problems with his diet reached the level of substantially burdening his religious beliefs. In *Abdulhaseeb*, the Tenth Circuit stated that "[w]e are not willing to conclude . . . that every single presentation of a meal an inmate considers impermissible constitutes a substantial burden on an inmate's religions exercise." *Abdulhaseeb*, 600 F.3d at 1321. Moreover, Plaintiff attributes intent and evil motive to his problems receiving a kosher meal tray, but his conclusion is not supported by factual allegations.

Plaintiff also mentions the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Section 3 of the RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person ... confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under the RLUIPA, Plaintiff bears the burden of showing that the activity at issue is a religious exercise, and that Defendants have substantially burdened that exercise. 42 U.S.C. §

2000cc-1.  The burden then shifts to the government to show that the government action is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-2(b).  The RLUIPA is to be construed broadly to favor protection of religious exercise.  42 U.S.C. § 2000cc-3(g).

Recovery under the RLUIPA is limited to official capacity claims for equitable relief.  *See Sossamon v. Texas*, 563 U.S. 277, 279 (2011) (holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (noting RLUIPA does not permit individual capacity claims).

For the same reasons Plaintiff fails to state a constitutional religious freedom claim, Plaintiff fails to state a claim under the RLUIPA.

### F.  Retaliation

Plaintiff does not include a separate count for retaliation, but he does mention that he believes he is being retaliated against for filing grievances and lawsuits, or perhaps because he is gay.  "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'"  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996).  However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice."  *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (plaintiffs must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").  To prevail, a prisoner must show that the challenged actions

would not have occurred "but for" a retaliatory motive.  *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144)); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Plaintiff's claim of retaliation is subject to dismissal for failure to allege adequate facts in support of this claim.  As noted, a prisoner claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier*, 922 F.2d at 562 n.1.  In addition, he "must prove that 'but for' the retaliatory motive, incidents to which he refers, including the disciplinary action, would not have taken place."  *Maschner*, 899 F.2d at 949–50; *see also Fogle*, 435 F.3d at 1263–64.  Plaintiff's allegations regarding retaliation are generally conclusory and lacking facts to demonstrate any improper retaliatory motive.

### G. Equal Protection

The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike."  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *see also Fogle*, 435 F.3d at 1260 ("Equal protection is essentially a direction that all persons similarly situated should be treated alike.").  An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991).  Therefore, in order to succeed on an equal protection claim, Plaintiff must allege that he was "similarly situated" to other inmates and that the difference in treatment was not "reasonably related to legitimate penological interests."  *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S.78, 89 (1987)); *see also Rider v.*

16

*Werholtz*, 548 F. Supp. 2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)).  A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory purpose" was a motivating factor in the disparate treatment attacked in the complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If the alleged difference in treatment is not based on a suspect classification, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose."  *Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012) (quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)).  Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim.  First, there is a presumption in favor of validity of prison officials' disparate treatment.  *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003).  Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) ("it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect"); *see also Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

Plaintiff's equal protection claim is subject to dismissal for failure to allege facts establishing its essential elements.  He does not identify specific similarly situated individuals who received different treatment.  Furthermore, while he alleges that he was treated differently due to his religion and he repeatedly mentions that he is gay, he does not allege facts suggesting that he was treated differently because he is Jewish, and sexual orientation has not been found to be a

suspect classification under the Equal Protection Clause.  Plaintiff submits nothing more than unsupported allegations of improper intent of the defendants, allegations which are deficient in establishing a claim under § 1983.

### H.  Conspiracy

As with retaliation, Plaintiff mentions conspiracy or collusion but does not sufficiently state a conspiracy claim.  A conspiracy claim under § 1983 requires the allegation of "specific facts showing an agreement and concerted action among the defendants."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  In addition, a plaintiff must allege facts showing an actual deprivation of a constitutional right.  *See Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (in order to prevail on a § 1983 conspiracy claim, a plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right").

Plaintiff's conspiracy claim is subject to dismissal for failure to allege adequate facts to establish the elements of this claim.  As noted, in order to state a claim of conspiracy, Plaintiff must allege facts showing both an agreement and an actual deprivation of a constitutional right.  *See Thompson*, 58 F.3d at 1517.  Plaintiff's Complaint does neither.  Even though Plaintiff's allegations are accepted as true on initial review, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Plaintiff's Complaint asserts conclusory and speculative claims of conspiracy among jail officials with no supporting factual allegations.  Such bald assertions fail to state a viable claim for relief.  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (per curiam) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

### I. Claim for Damages

Section 1997e(e) . . . provides in pertinent part:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).   Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e).   Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights.   The Court finds that Plaintiff's claim for actual or compensatory damages is subject to being dismissed unless he alleges facts showing a prior physical injury.

Plaintiff also seeks punitive damages, which are available in a § 1983 lawsuit.  However, they "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879; (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992); *see also Patel v. Wooten*, 264 F. App'x 755, 760 (10th Cir. 2008) (determining, in the First Amendment context, that prison officials' actions did not "rise to the level of evil intent or reckless or callous indifference to sustain a jury award of punitive damages")).   Plaintiff's allegations do not support the finding of evil intent or reckless indifference necessary to make a claim for punitive damages.

**IV.  Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why the claims and defendants discussed above should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file

a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the Court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (23-3014-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper amended complaint in which he concisely (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is provisionally granted, pending receipt of a certified copy of Plaintiff's inmate account statement for the 6-month period preceding the filing of the Complaint.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 21, 2023,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 21, 2023,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated January 20, 2023, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**