# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MATTHEW SCHLOBOHM** | \| | Case No. 23-3014-JWL |
| | \| | |
| **Plaintiff,** | \| | |
| | \| | |
| **v.** | \| | |
| **Unified Government of Wyandotte County/Kansas City, Kansas,** | \| | JURY TRIAL DEMANDED |
| Serve: | \| | |
| County Clerk | | |
| 701 N 7th St Trfy, | \| | |
| Kansas City, KS 66101, | | |
| | \| | |
| **Wyandotte County Sheriff's Department** | \| | |
| Serve: | \| | |
| Sheriff Daniel Soptic | | |
| 701 N 7th St Trfy, | \| | |
| Kansas City, KS 66101, | | |
| | \| | |
| **Wellpath, LLC** | \| | |
| Serve: | | |
| Corporate Paralegal | \| | |
| 1283 Murfreesboro Pike, Ste 500 | | |
| Nashville, TN 37217, | \| | |
| | \| | |
| **Dr. Danny K. Stanton** | \| | |
| Serve: | | |
| 2120 E 63rd St | \| | |
| Kansas City, MO 64130, | | |
| | \| | |
| **Esmeralda Wilson** | \| | |
| Serve: | | |
| 701 N 7th St Trfy, | \| | |
| Kansas City, KS 66101, | | |
| | \| | |
| **Wyandotte County Sheriff's Deputy Meador** | | |

1

Serve:             |
701 N 7th St Trfy
Kansas City, KS 66101,    |

**Karina Purcell**        |
Serve:
701 N 7th St Trfy     |
Kansas City, KS 66101,

                    |

**D. Dull, Health Services Administrator**  |
Serve:
701 N 7th St Trfy
Kansas City, KS 66101,    |

**"Miss Hill"**          |
Serve:
701 N 7th St Trfy     |
Kansas City, KS 66101,

                    |

**Registered Nurse #1**    |
Serve:
701 N 7th St Trfy
Kansas City, KS 66101    |

**Wyandotte County Sheriff's Captain**  |
**Taylor (#1657)**
Serve:             |
701 N 7th St Trfy
Kansas City, KS 66101    |

**Wyandotte County Sheriff's Uniformed**
**Officer Bond**
Serve:
701 N 7th St Trfy
Kansas City, KS 66101

       **Defendants.**

## PRO SE PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW the above-captioned pro se Plaintiff Matthew Charles Schlobohm who, through Plaintiff's causes of action against the above-captioned Defendants, hereby alleges and states as follows:

## NATURE OF THE CLAIMS

1. This cause of action is brought pursuant to 42 U.S.C. § 1983 against the Unified Government of Wyandotte County/Kansas City, Kansas; Wyandotte County Sheriff's Office; Wellpath, LLC; Danny K. Stanton, MD; Esmeralda Wilson; Wyandotte County Sheriff's Deputy Meador; Karina Purcell; D. Dull; Registered Nurse #1; "Miss Hill"; Wyandotte County Sheriff's Uniformed Officer Captain Taylor; and Wyandotte County Sheriff's Office Uniformed Officer Bond for violations of his civil rights guaranteed by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and for an award of damages and reasonable attorney's fees.

## Parties and Jurisdiction

2. Plaintiff is, and at all times pertinent to this complaint was, a citizen of the United States.

3. At all times relevant to this complaint, Plaintiff was held as a pre-trial detainee at the Wyandotte County Adult Detention Center in Kansas City, Kansas. Plaintiff has been released from custody.

4. Plaintiff is a white, gay, Jewish and disabled male who resides in Kansas City, Missouri.

5. All Defendants listed here were acting under the color of state and/or federal law.

6. All Defendants are sued in their individual and official capacities.

7. Upon information and belief, Defendant Unified Government of Wyandotte County, Kansas/Kansas City, Kansas (hereinafter "Defendant UG") was created by and established under the law of the state of Kansas in 1997. It is authorized to be sued in its

own name. It is a subdivision of the state of Kansas, organized and existing under the laws of Kansas.

8.  Upon information and belief, Defendant Wyandotte County Sheriff's Office (hereafter referred to as "Defendant WyCoSo") is responsible for the supervision, management, and control of the uniformed and civilian officers, staff and inmate workers of the Wyandotte County Adult Detention Center (hereafter referred to "the jail").

9.  Upon information and belief, Defendant Wellpath, LLC is an active, foreign limited liability company formed in the State of Delaware with its principal place of business in Nashville, Tennessee. Defendant Wellpath, LLC contracts with the Unified Government of Wyandotte County/Kansas City, Kansas to provide medical services at the Wyandotte County Adult Detention Facility.

10. Upon information and belief, Defendant Dr. Danny K Stanton, MD, is a citizen and resident of Missouri; and, at all times relevant to this action, he was a physician specializing in internal medicine and employed by Wellpath, LLC to provide medical care and treatment to inmates at the Wyandotte County Adult Detention Facility. Upon information and belief, Defendant Stanton was alleged to have been contacted on a daily basis by Defendant Wellpath, LLC's employees regarding medical care at the jail and he was the alleged ultimate decider of whether a patient received care and what form that care did or did not take. He is sued in his individual capacity and as an employee of Wellpath, LLC.

11. Upon information and belief, Defendant Esmeralda Wilson was a civilian employee of Defendant WyCoSo and Defendant UG as the jail's Programs supervisor. Defendant Wilson was the primary point of contact for any and all services offered to Plaintiff and

every other inmate at the jail, including, but not limited to, sending and receiving privileged, legal and/or personal mail, communicating with the courts, transmitting written Inmate Communication Forms (ICFs, the required forms needed to make a request/complaint/grievance to any jail or court person, official or entity) in a timely, consistently applied and legal manner. Upon information and belief, Defendant Wilson oversaw a staff who aided in the daily processing of said ICFs and in mail duties, among other functions. Upon information and belief, Defendant Wilson was the official person designated to ensure that all religious rights were observed in a consistent, non-biased and non-discriminatory manner. She is sued in her individual and official capacities.

12. Upon information and belief, Defendant Correctional Officer Deputy Meador was an employee of the Wyandotte County Sheriff's Office and Unified Government of Wyandotte County/Kansas City, Kansas who worked in the Wyandotte County Adult Detention facility.

13. Upon information and belief, Defendant Karina Purcell was a registered nurse in the state of Kansas. She was employed by Wellpath, LLC to perform all duties of a general internal medicine registered nurse, including, but not limited to, processing sick call requests from inmates, triage, making competent, truthful initial medical assessments based on sound clinical protocols and making referrals to Defendant Stanton, a specialist or a hospital as needed. Upon information and belief, Defendant Purcell at all times had a legal and ethical duty to report findings accurately and not to record any fraudulent information of any kind on a patient's medical record. Upon information and belief, Defendant Purcell is subject to the Kansas Nurse Practice Act in the performance of her duties.

14. Upon information and belief, Defendant D. Dull was a registered nurse employed by Wellpath, LLC as the Health Services Administrator at the jail. Upon information and belief, Defendant Dull was responsible for the implementation of Defendant Wellpath, LLC's policies at the jail as well as the conduct and the effectiveness of Defendant Wellpath, LLC's nursing staff at the jail on a day-to-day basis while also being the official responsible for the administrative aspects of Defendant Wellpath, LLC's operation and for maintaining accreditation with the State of Kansas. Upon information and belief, Defendant Dull is subject to the Kansas Nurse Practice Act in the performance of her duties.

15. Upon information and belief, Defendant Miss Hill was employed by Defendant UG and Defendant WyCoSo as the mail clerk at the jail. Defendant Hill processed all incoming and outgoing mail, including all personal, privileged and legal mail to/from the United States Postal Service on a daily basis for all inmates. Upon information and belief, Defendant Hill directly reported to Defendant WyCoSo.

16. Upon information and belief, Defendant Registered Nurse #1 was a registered nurse in the state of Kansas. She was employed by Wellpath, LLC to perform all duties of a general internal medicine registered nurse, including, but not limited to, processing sick call requests from inmates, triage, making competent, truthful initial medical assessments based on sound clinical protocols and making referrals to Defendant Stanton, a specialist or a hospital as needed. Upon information and belief, Defendant Purcell at all times had a legal and ethical duty to report findings accurately and not to record any fraudulent information of any kind on a patient's medical record. Upon information and belief,

6

Defendant Registered Nurse #1 is subject to the Kansas Nurse Practice Act in the performance of her duties.

17. Upon information and belief, at all relevant times, Defendants Hill, Meador and Wilson acted under the supervision, management, policies and procedures of, and for the furtherance of priorities set by and for, Defendants UG and Defendant WyCoSo.

18. Upon information and belief, at all relevant times, Defendant Purcell acted under the supervision, management, policies and procedures of, and for the furtherance of priorities set by and for, Defendants Wellpath, LLC, Stanton, Dull, UG and WyCoSo.

19. Upon information and belief, at all relevant times, Defendant Dull acted under the supervision, management, policies and procedures of, and for the furtherance of priorities set by and for, Defendants Wellpath, LLC, Stanton, UG and WyCoSo.

20. Upon information and belief, at all relevant times, Defendant acted under the supervision, management, policies and procedures of, and for the furtherance of priorities set by and for, Defendants Wellpath, LLC, UG and WyCoSo.

21. Each defendant is sued individually and in their official capacity unless otherwise noted.

22. This is an action for the violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

23. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331 and 1343, as this lawsuit arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983.

24. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in Wyandotte County/Kansas City, Kansas.

**Facts**

25. On approximately December 5, 2023, Plaintiff was booked into the Wyandotte County Adult Detention Center ("the jail") as a pretrial detainee to be held until his day in court.

26. As part of the booking process, Plaintiff provided to Defendant WyCoSo any and all pertinent demographic data (included, but not limited to, my sincerely held Jewish faith, the fact that I am gay, my status as immunocompromised and that I am disabled pursuant to the standards set forth by the United States Department of Health and Human Services) and then I was sent to the nursing station for a complete evaluation of my historical and ongoing medical and psychological health issues.

27. Defendant Registered Nurse #1, an employee of Defendant Wellpath, LLC, began the evaluation by asking me to sign a release of information to my medical provider(s), which she confirmed receiving and reviewing that same day in my presence.

28. Plaintiff informed Defendant Registered Nurse #1 that I had quite a large medical record due to potentially life-threatening conditions/issues from which I have nearly died and threaten my health and life but for daily treatment of prescription medications.

29. Plaintiff's personal physician at the University of Kansas Hospital, upon Plaintiff's release from custody, confirmed that my entire medical record was sent to Defendant Wellpath, LLC directly at the jail on the day I was booked into the jail.

30. On the same day, I asked Defendant Registered Nurse #1 when I would be getting my medications. Defendant shrugged her shoulders and acted like I was joking. I asked her again. She asked, "which ones?" To which I responded, "all of them. They're my prescribed medications for a reason."

31. Still in booking and now walking freely around a room filled with inmates, civilians, deputies and anyone else who happened to be standing around, Defendant Registered

Nurse #1 said "I'm most worried about that blood thinner – you have to have that every day, right?" That is affirmative, I replied. Her statement does two things: 1) Violated my Fourteenth Amendment right to the privacy of my medical information by casually and loudly discussing said medical information for all to hear; and, 2) Established full knowledge of the seriousness of my medical need. I never received a single dose of a blood thinner for the entirety of my detention despite begging to be given my medication, which they speciously, intentionally and with evil motive denied over and over again throughout December 2022 and January 2023 causing Plaintiff extreme panic attacks and fear for his life 24 hours a day, which, in turn, created an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

32. Plaintiff is immunocompromised and so I am very susceptible to opportunistic infections, especially respiratory ones (due to lung damage caused by prior pulmonary emboli and infection), and I am more likely to suffer more severe symptoms and be at much higher risk of death. At various points in time in December 2022 and January 2023, and repeatedly, including at booking, I requested a COVID-19 vaccine. I was told that I would receive one. There was signage in nearly every room in the jail saying something like, "Want a vaccine? Just ask a nurse and you'll get it for free!" I never received a COVID-19 vaccine at any point of my time at the jail, which violated my rights under the Eight Amendment as to my serious medical need as someone of known heightened risk of infection, suffering of extreme symptoms and death from COVID-19 infection.

33. Defendants knew there had been and at that very point in time was indeed a COVID-19 outbreak in that unsanitary facility, so it is not merely conclusory to assert a medical need from a hypothetical infection in the abstract. Any reasonable official would conclude that

given my immunocompromised state (which was known to the Defendants) and the outbreak of COVID-19 in the jail (which was also known to the Defendants but not to the inmates at large), and the well-known fact that more than a million people have died from COVID-19, not providing a COVID-19 vaccine to me would be deliberate indifference to a serious medical need.

34. Still in booking, I went through my long list of medical needs with Defendant Registered Nurse #1. I informed her that I was allergic to most synthetic fibers and that I requested religious accommodation for a cotton uniform. Again, she seemed to think I was joking and, in violation of my rights under the Eighth Amendment (to be free from the cruel and unusual punishment of suffering through a 24 hour-a-day allergic reaction to the filthy, unsanitized, synthetic-based uniforms while being deliberately indifferent to the direct and proximate harm caused by their reckless disregard for my serious medical need to which they alone could provide the remedy) and First Amendment (the right to practice my sincerely held religious beliefs, in this case by not wearing a uniform of a mixture of fibers, as prohibited under Jewish law), I never received either medical care or an adequate uniform at any point.

35. After intake, inmates are taken to an intake pod where they are housed with another cellmate (in a tiny cell clearly designed for one person). There, in violation of Plaintiff's constitutional rights under the First, Fourth, Eighth and Fourteenth Amendments, all inmates were under 24 hour a day lockdown with no out of cell time provided except in exceedingly rare situations and with no due process of any kind granted. When I would ask for my constitutionally guaranteed time out of cell, Defendants UG and WyCoSo's

employees would do and say what they were trained and ordered by Defendants UG and WyCoSo to do: Refuse the request and threaten punishment if you ask again.

36. There were no COVID-19 tests done prior to being placed into these tiny cells with a complete stranger – no way whatsoever to know if they carried the virus or not since a person may be asymptomatic yet still carry the virus and transmit it to others, as was well known to all Defendants as evidenced by signage (authored and approved by Defendant Wellpath, LLC) that were placed throughout the facility stating exactly that. Defendants UG, WyCoSo and Wellpath, LLC seemingly did not want to know if someone had COVID-19 so they would have culpable deniability in case of an outbreak. This knowing, intentional, deliberate indifference to the serious medical need of preventing an outbreak of COVID-19 violated my rights under the Eighth and Fourteenth Amendments.

37. At some point in mid-December 2022, a member of the nursing staff informed Plaintiff that they'd "been swamped lately." I did not know what she meant. I then inferred she meant that there was COVID-19 in the jail, so I asked if my assumption was correct to which she replied in the affirmative.

38. The jail is grotesquely and inhumanely filthy anywhere and everywhere you look: Human feces on the toilets, floors, walls, doors, showers, windows, metal shelves that pretend to be beds and almost anywhere you could possibly imagine. Defendants UG and WyCoSo's engaged in a violation of my Eighth and Fourteenth Amendment rights through the enactment of their policy of ignoring the squalid, unsanitary, disease and filth-infested living conditions through the reckless disregard of their employees at the jail – several of whom told me numerous times throughout December 2022 and January 2023 that it wasn't their job to clean it up, so they didn't. On approximately December

18, 2022, Plaintiff was told by Defendant WyCoSo staff that "inmate workers were

supposed to do that" (clean the feces and other disease-carrying waste) – of course, the

inmate workers report to Defendant UG and WyCoSo and they do as they are told and as

they are trained to do, so it *is* the responsibility of Defendant  UG and WyCoSo to

provide sanitary and humane conditions in the jail even if one were to ignore the rights

guaranteed by the Constitution and take Defendants assertions in a fact-free vacuum.

39. Before being moved to general population, Defendant Wellpath, LLC, through the

nursing staff it employs, gave every single inmate a COVID-19 test under the assumption

that this would in itself prevent an outbreak. Considering that a nurse had just told me

there were multiple COVID-19 outbreaks in the jail at that moment and at many times in

the recent past, there seemed to be a flaw in that logic, which added to a sense of panic

and fear for my life on top of the panic and fear from not receiving any of my prescribed

medications.

40. On December 13, 2022, Plaintiff received notification that he tested negative for COVID-

19 (see Exhibit A-A-1).

41. According to the aforementioned exhibit ("COVID-19 Lab Result Notification"; a

document drafted by, attributed to and carrying the logo of Defendant Wellpath, LLC):

42. "COVID-19 is a respiratory illness caused by a newly identified coronavirus, SARS-

CoV-2. Symptoms of COVID-19 include cough, fever or chills, shortness of breath or

difficulty breathing, muscles or body aches, sore throat, new loss of taste or smell,

diarrhea, headache, fatigue and nausea and vomiting. *COVID-19 can be severe, and in*

*some cases result in death.*" (emphasis added)

43. "*COVID-19 can be spread from person to person. Prevention involves avoiding contact with those who may have the virus; this includes frequent handwashing, coughing into tissues or the bend in your elbow, and wearing a mask or cloth face covering when you cannot practice physical distancing*." (emphasis added)

44. "If you have any questions or concerns about the test result, please submit a health services request form to talk to a health care staff member."

45. The document is signed by Defendant Karina Purcell and it is dated December 14, 2022.

46. Defendants UG and WyCoSo's written and unwritten policies and procedures made these precautions impossible: 1) We were trapped in tiny one-man cells with another human being, so it was literally impossible to avoid contact with those who may have the virus; 2) Defendants did not provide proper sanitary conditions let alone sufficient or adequate materials (like the kind of soap that would actually help in preventing the transmission of viruses or illnesses – or any soap at all); 3) No tissues were ever provided even when asked for directly to Defendants UG, WyCoSo and Wellpath, LLC's employees; 4) Coughing in the bend of your elbow is only effective if you are allowed to have properly cleaned uniforms and towels on a regular basis and if you are allowed to shower with proper hygienic materials in a shower that is not infested with feces, flies or is not a cesspool of infection – none of these conditions were met at the jail due to the policies and procedures and dereliction of duty of Defendants UG, WyCoSo and Wellpath, LLC.

47. Plaintiff submitted a multitude of request forms to health services, as encouraged to do by Defendant Wellpath, LLC, regarding my test result and what they were going to do to help safeguard my immunocompromised condition. I sought or had interactions with Defendants Registered Nurse #1, Dull, Purcell, Meador and WyCoSo about this same

issue, as their written policy encouraged, but none of the Defendants did a single thing or even acknowledged my medical need in a serious manner. Their deliberate indifference again violated my Eight Amendment rights.

48. "There you go again!" yelled Defendant Meador on approximately December 21, 2022, when I begged him for help (as I had been doing for the preceding approximately 24-36 hours) because I felt as though I was dying; but, as of then, I didn't know why I felt that way. Surely it wasn't COVID-19, I thought, because I supposedly just had a competently executed test conducted by Defendant Purcell using testing kits approved by Defendant Wellpath, LLC mere days earlier. At this point I was in the general population pod (note: even though I was classified as minimum security, which means I should have been allowed out of my cell basically all day – at least in theory), I was placed in the maximum security pod – again with a new person in a feces-covered, inhumanely cold cell that was clearly built for one person – although really it was even worse than that because we were, again, on 24 hour-a-day lockdown for the entirety of my detention, in violation of my First, Fourth, Eighth and Fourteenth Amendment rights).

49. Defendant Meador did absolutely nothing to get medical care for me at any point.

50. On approximately December 22, 2022, Defendants Meador, Purcell, Registered Nurse #1 and WyCoSo's staff began wearing polyurethane head & face masks on top of the typical face masks one would wear during the pandemic and they were making sure to stand very clearly behind the doors on the rare occasions that they actually came to check on us. They appeared to be terrified of contracting something, but they weren't saying what it was or why they were doing what they were doing. They had no concern whatsoever for me or the other inmate with whom I was housed, but they were terrified for their own

safety. This establishes state of mind and intentionality: They knew they themselves would have a serious medical need if they contracted whatever it was that they were trying to protect *themselves* against, so Defendants UG, WyCoSo and Wellpath, LLC provided only to the staff the items needed to *prevent* infection – while keeping the inmates in the dark and unprotected with deliberate indifference.

51. My condition continued to deteriorate. I had every symptom listed on Defendant Wellpath, LLC's COVID-19 Lab Result Notification and I informed Defendant Meador in person (or, through the door when he quickly walked by as he pretended to be doing his rounds) on approximately December 22, 2022. He finally let me out of my cell so I could fill out a sick call request.

52. I could barely hold myself up let alone walk without serious risk of falling and hitting one of the sharp metal tables that are scattered throughout the pod. My cell was as far as possible from the kiosk where I needed to submit the request. I could hear inmates shouting in shock, horror and dismay at my horrible condition. "How do you get COVID *after* the outbreak!" (emphasis added to reflect inflection) shouted one inmate. It took me several minutes to get to the kiosk when a healthy person could do so in approximately 20 seconds. Everyone in the vicinity appeared to notice and express concern except the one person in the pod whose duty it was to ensure my safety – Defendant Meador.

53. As I had done on numerous occasions over the prior approximately 48 hours, again I begged for help in my urgent medical request. As with every other request, they intentionally mischaracterized my condition as "your flu" (as if that were itself non-life threatening to the immunocompromised Plaintiff) and refused to provide any treatment.

They were doing this, per Defendant Dull, according to their training as provided by Defendant Wellpath, LLC and at the behest of their boss, Defendant Stanton.

54. At some point after receiving the negative COVID-19 test from Defendant Wellpath, LLC, and prior to December 23, 2022, however, I was given another COVID-19 test by one of Defendant Wellpath, LLC's nurses (as the nurse and Deputy M.J. Lopez stood behind my cell's door while wearing full P.P.E., multiple medical masks and gloves up to their elbows – yet no protections were given to any inmate).

55. On approximately December 23, 2022, Defendant Dull instructed a member of her staff to deliver Defendant Wellpath, LLC's "COVID-19 Positive Test Results Patient Letter" (Exhibit A-6) – unsigned, undated and incomplete in order to obfuscate the identity of the exact Wellpath, LLC, UG or WyCoSo employee(s) who had documented the test result in violation of the policies and procedures of Defendants Wellpath, LLC, UG and WyCoSO as well as proper medical protocol, which taken together constitutes fraud and the falsification of official records and my own medical record. (See exhibit A-6.) The Defendants conspired collectively and acted individually to violate my rights under the Eighth and Fourteenth Amendments by undertaking this deception.

56. "Your test was <u>POSITIVE</u> for COID-19. This means that you can pass COVID-19 to other individuals." The Court can read for itself Defendant Wellpath, LLC's enumeration of symptoms and precautions one should undertake so I will not repeat them. I had every single symptom and I told Defendant Meador this fact in the days surrounding the positive COVID-19 test. Defendants explicitly refused to provide means to comply with the precautions for either myself or the other person in my cell (or anyone else).

57. When I read the result, I again implored Defendant Meador for help on approximately December 23, 2022, at 6:10pm. Meador says he hasn't even discussed it with medical despite my clearly horrible state.

58. At that time, I mustered the strength to say, "this is an emergency – do you realize that you're playing with my life?" To which, just as before, Defendant Meador said, "here you go again!" Meador did nothing to obtain medical care then or at any point in violation of my rights under the Eighth and Fourteenth Amendments.

59. Over the next few days, Defendants Purcell, Dull, Registered Nurse #1 and other nursing staff took no basic, humane or evidence-based actions to treat the COVID-19 infection I had acquired at the jail. In fact, on approximately December 24, 2022, or so, Defendant Purcell stood in my doorway and gloated while saying through a smirk, "we're *never* taking you to the hospital – ever." (emphasis added to reflect inflection of Purcell's tone of voice.)

60. At that time, she did state that Defendant Stanton prescribed two Tylenol to be taken twice a day for treatment of COVID-19 infection.

61. Any reasonable person would understand that Tylenol would have absolutely no effect on a COVID-19 infection.

62. What was required were anti-retrovirals, which were available and known to Defendants Wellpath, LLC, Stanton, Dull, Purcell, Registered Nurse #1, UG and WyCoSo, but they refused to provide them due to their cost.

63. In fact, all nursing Defendants seemed to be taking obvious and absolute pleasure in seeing me suffer so horribly. Other inmates made this same observation upon hearing how they spoke to me and how they explicitly denied me any remedy.

64. On approximately January 1, 2023, I wrote an ICF to Defendant Dull requesting urgent medical care, to be taken to the emergency room at the University of Kansas Hospital and that "you can't force me to suffer from COVID-19 until I just die."

65. Plaintiff would be dead if not for his own body miraculously and against the odds overcoming the COVID-19 infection that nearly killed him due to the intentional actions and inactions, policies, procedures and deliberate indifference of Defendants Wellpath, LLC, Dull, Purcell, Meador, Registered Nurse #1, UG and WyCoSo in violation of my Eighth and Fourteenth Amendment rights.

66. Plaintiff tried to write this court about the situation in the midst of this full-blown COVID-19 infection to seek emergency help, but I was unable to articulate what was going on or how they were torturing me and how they falsified records to cover their tracks due to the immense cognitive impairment, brain fog and well-known suffering of someone with a COVID-19 infection. Defendants intentionally withheld treatment for exactly this purpose – to prevent my successful filing of lawsuits and for retaliation of attempting the same.

67. By approximately January 5, 2023, I had lost 40 pounds. I could feel my lung capacity being irreparably harmed by the virus that was eating away at me. "You look dead" is a phrase I heard often.

68. I say "tried to write this Court" because Defendants Hill, Wilson, UG and WyCoSo conspired collectively and acted individually not only to prevent the mailing of my legal mail to this Court seeking assistance, but, according to an admission from Defendant Wilson's aide directly to me on approximately January 6, 2023, at around 1:45pm,

Defendants Wilson and Hill opened my sealed envelope that was clearly labeled as "legal mail" and properly addressed to this Court on approximately January 4, 2023.

69. Defendants then, according to Defendant Wilson's aide, copied and distributed my complaint to Defendants WyCoSo, UG, Dull, Stanton and Wellpath, LLC, and then they refused to mail it.

70. The Court will notice that it did not receive my complaint until approximately 10 days later – and that 15 pieces of mail came at once. This is because Defendants did not mail my legal mail until the day of my release.

71. This seizure of my legal mail and these actions taken together are tantamount to conspiracy and are a violation of my First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.

72. On January 6, 2023, at approximately 2:00pm, Defendant Wilson brought my complaint back to me (the envelope clearly having been tampered with) and made specious arguments as to why they could not send it in violation of their own written policy and the law.

73. Defendant Wilson said at that time, "we have rules and policies that you can't see or read" after I showed her Defendants UG and WyCoSo's written rules.

74. Specifically, I brought her attention to Rule #11 regarding privileged and legal mail and Defendants UG, WyCoSo, Wilson and Hill's written obligation to 1) not open it, 2) not read it, 3) copy it upon request, and 4) mail it in its entirety.

75. Defendants violated their written rule and policy in violation of Plaintiff's First and Fourth Amendment rights.

76. After I attempted to file this lawsuit, as retaliation, Defendants UG and WyCoSo moved me from general population to solitary confinement for no legitimate penological reason and based purely out of revenge for being called to account for the myriad ways in which my rights were violated.

77. I was placed in solitary confinement in the dreaded "I Pod" (which is called "medical observation" but that is an intentional misnomer as there is no medical observation done – it is merely solitary confinement given the veneer of medical need so as to avoid court review and intervention without substantive due process, or due process of any kind) at 4:30pm on the Friday following the day I sealed the envelope to this Court – an obvious attempt to prevent me from receiving any type of help from any court or legal assistance of any kind as well as to isolate me from witnesses or human contact of any kind and to prevent my access to the law library and further attempts to access the courts, in violation of my rights under the First, Sixth, Eighth and Fourteenth Amendments.

78. I still received no medical treatment of any kind for any pre-existing condition or the current COVID-19 infection.

79. Still not satisfied with torturing me, Defendants moved me to an even worse location on approximately January 15, 2023: The booking cell.

80. This specifically modified cell is clearly meant to resemble the "Black Hole of Calcutta" – there is no light, no running water, no functioning toilet, no airflow whatsoever and the windows built into the door is covered with green felt so as to muffle screams for help as well as the ability of anyone to witness to torture taking place inside.

81. I still suffered from active COVID-19 infection on January 15, 2023.

82. Immediately upon entering this black hole of a cell, my lungs felt as though they were on fire and I felt like I could not breathe which caused panic and extreme distress and fear. I asked Defendant Bond and Defendant Taylor if I could be moved to P.C. (protective custody) because I feared for my life in this cell due to the hazardous chemicals that were immediately prior to my placement used in the cell. They laughingly pretended not to know what I meant.

83. They slammed the door in my face and refused to place me in P.C.

84. Luckily I had saved blank ICF forms and so on January 15, 2023, at 1:04pm I submitted an ICF to Administration and the Major or Captain on duty (see Exhibit H-1).

85. I stated, "I fear for my life in this cell. I told [Deputy] Red that I have lung damage from pulmonary emboli and current COVID infection which makes breathing very painful & laborious and the strong, noxious chemical odor[…]I can feel is permanently causing irreparable harm to my lungs. So I need to go to P.C. ASAP. Thank you."

86. Despite the green felt covering over the window, I could see a tiny slit of the area where Defendants Bond and Taylor were working, and Defendant Bond, upon seeing my ICF, gritted his teeth and stage whispered "GOD DAMN IT!" which shows his knowledge that he was obligated to take me to P.C. at my request.

87. Defendant Taylor responded in an incoherent manner, deliberately indifferent to my serious medical needs in violation of my Eighth Amendment rights and also deliberately not addressing the substance of my request to be taken to P.C. in violation of my Eighth Amendment rights.

88. "You have court scheduled for 1/18/2023. Why do you need P.C.?" was Defendant Taylor's response.

89. I had literally explained exactly why I needed P.C. in my ICF but she was choosing to punish me in furtherance of the Defendants retaliation and deliberate indifference to my serious medical needs regime.

## COUNT I: PRISON CONDITIONS PURSUANT TO 42 U.S.C. § 1983

### (v. Defendants UG, WyCoSo)

90. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the aforementioned paragraphs.

91. Defendants, through their acts and omissions, failed to provide sanitary conditions for Plaintiff as follows:

   a.  Defendants housed too many inmates, leading to overcrowding and a lack of sanitary, safe and/or humane conditions for Plaintiff and others;

   b.  Defendants failed to adequately staff the jail, leading to squalid, inhumane conditions where contagious infections, such as COVID-19 and others, were commonplace yet through their reckless inactions permitted to endanger each and every inmate knowing full-well the risks;

   c.  Defendants failed to provide the tools necessary to prevent the spread of COVID-19 at every stage of detention;

   d.  Defendants ignored clear and obvious plumbing concerns, which allowed human feces and infestation of living areas throughout the jail;

   e.  Defendants have been made aware of these conditions on numerous occasions as shown in court and media records yet they took no substantive or minimal action to rectify the situation.

f.   Defendants policy of 24-hour-a-day lockdown prevented access to the telephones, TVs, recreation, ability to submit ICFs and any ability to socialize with other inmates in violation of the First and Eighth Amendments.

g.   These set of facts give direct and proximate cause to the physical, emotional and lifelong irreparable harm suffered by Plaintiff.

92. Relief sought:

93. A judgment that my civil rights were violated by Defendants listed in this Count.

94. An award of damages to include monetary damages as well as the lifelong payment of Plaintiff's health insurance and medical bills as it relates to all forms of physical and mental suffering, anguish, trauma and irreparable harm directly and proximately caused by Defendants.

## COUNT II: EIGHTH AND FOURTEENTH AMENDMENTS -- DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, 42 U.S.C. § 1983
### (v all Defendants)

95. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

96. At all stages of Plaintiff's placement under the care of Defendants, all Defendants acted in a coordinated, conspiratorial manner to cause direct and proximate irreparable harm to Plaintiff while being deliberately indifferent to his clearly serious medical needs.

97. During all times when his status was that of an inmate of the Wyandotte County Adult Detention Facility, Plaintiff was protected from deliberate indifference to her known serious medical needs by the Eighth Amendment.

98. Under the Fourteenth Amendment, Plaintiff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose, or actions that appear excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

99. There is no qualified immunity for private actors working in a jail.

100.     Defendant Meador is not entitled to qualified immunity because their conduct was clearly established to be unconstitutional at the time of Plaintiff's incarceration.

101.     As a result of the allegations contained in this Complaint, Individual Defendants are liable under 42 U.S.C. 1983 for the violation of Plaintiff's rights under the Eighth and Fourteenth Amendments by acting with deliberate indifference to his serious medical needs and disregarding the excessive risks associated with his serious medical conditions, despite being expressly aware of Plaintiff's known serious medical needs and obvious need for the same.

102.     As a result of the allegations contained in this Complaint, Individual Defendants are liable under 42 USC 1983 for the violation of Plaintiff's rights under the Fourteenth Amendment by engaging in conduct that was objectively unreasonable and not rationally related to a legitimate nonpunitive governmental purpose.

103.     All of the Individual Defendants named in this Complaint participated in the constitutional deprivations described herein.

104.     Despite Plaintiff being prescribed multiple medications by his physicians, at no point in time did Defendants provide his medication.

105.     Plaintiff suffered, and continues to suffer to this day, extreme and irreparable physical harm, mental anguish, fear, terror, and an inability to enjoy life or have meaningful relationships based on trust and respect.

106.     Plaintiff was admitted to the University of Kansas Hospital's Strawberry Hill Campus (psychiatric facility) twice following release from custody.

107.     Upon each admission, Doctors diagnosed Plaintiff with PTSD, severe episode of recurrent major depressive disorder, generalized anxiety disorder, narcolepsy with cataplexy and Long COVID.

108.     In doing the acts complained of, each Defendant acted under the color of law to deprive the Plaintiff of constitutionally protected rights, including, but not limited to:

   a.   The right to reasonable medical attention for serious medical conditions as guarantted by the Eighth and Fourteenth Amendments to the U.S. Constitution;

   b.   The right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments;

   c.   The right to substantive due process as guaranteed by the Fourteenth Amendment.

109.     Relief:

   a.   Enter judgment in favor of Plaintiff and against Defendants;

   b.   Plaintiff seeks compensatory and extensive punitive damages against all defendants and a statement that his constitutional rights have been violated.

   c.   Plaintiff also seeks payment of all medical and psychiatric-related bills in perpetuity under a medical plan of Plaintiff's choosing to be paid by all Defendants.

## COUNT IV: ILLEGAL SEARCH AND SEIZURE OF LEGAL MAIL; DENIAL OF ACCESS TO COURTS AND LEGAL ASSISTANCE, 42 U.S.C. § 1983

### (v Defendants Hill, Wilson, WyCoSo, UG)

110.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

111.    Defendants violated their own written policies, rules, procedures and the federal and state law by refusing to mail Plaintiff's complaint.

112.    Defendants likewise violated the same by opening Plaintiff's complaint, photocopying it, disseminating it among themselves and others and lying to Plaintiff about his rights regarding access to the courts.

113.    Defendants violated Plaintiff's rights to meaningful access to a law library by placing Plaintiff in solitary confinement without cause and without due process with the explicit intention to deprive of him said access as well as to deny him the ability to have witnesses or communicate with the outside world while providing no due process of any kind for this action.

114.    Defendant's legal mail was "seized" as part of this conspiracy.

115.    Since Defendant was seeking emergency help for the COVID-19 infection from which he was suffering due to Defendants negligence, and for which Plaintiff plausibly could have died as a direct and proximate result, it is not relevant that *eventually* (after his release from custody) Defendants mailed his legal mail.

116.    Plaintiff very easily might have died in the interim, which caused extreme panic, stress, mental anguish, despair, hopelessness, traumatization and fear 24/7 and which continues to this very day.

117.    Plaintiff is being treated to this day for the PTSD and Long COVID symptoms he acquired as a direct and proximate cause at the hands of Defendants.

118.    Plaintiff suffered, and continues to suffer to this day, extreme and irreparable physical harm, mental anguish, fear, terror, and an inability to enjoy life or have meaningful relationships based on trust and respect.

119.    Defendant himself was "seized" and punished as retaliation for attempting to access the courts.

120.    These actions constitute a violation of Plaintiff's First, Fourth, Sixth, Eighth and Fourteenth Amendment rights.

121.    Relief:

    a.  Plaintiff seeks a statement that his constitutional rights were violated by all Defendants;

    b.  Enter judgment in favor of Plaintiff and against Defendants;

    c.  Plaintiff seeks compensatory and extensive punitive damages against all Defendants for their shocking, deliberate and conspiratorial collective and individual actions to seize Plaintiff's legal mail, his person, prevent access to the courts to seek emergency remedy for serious medical needs of the utmost urgency and the retaliation he endured for the same;

    d.  Plaintiff seeks all other damages as are available and as the Court sees just and proper taken all these factors written above into consideration.

## COUNT V – SUPERVISORY AND MUNICIPAL LIABILITY; FAILURE TO SUPERVISE ANDTRAIN, 42 U.S.C. § 1983 (*MONNELL*)

122.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

123.      Defendant Meador, acting under the supervision of Defendant UG and Defendant WyCoSo, violated Plaintiff's constitutional rights as specified in the above-stated paragraphs.

124.      Upon information and belief, the Mayor of Defendant UG, the City Council of Defendant UG and the sheriff of Defendant WyCoSo have final policymaking authority with regard to establishing written policies and training programs governing the conduct of WyCoSo deputies and personnel performing functions on their behalf at the jail.

125.      Upon information and belief, Defendant UG developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in the jail, which caused the violation of Plaintiff's rights.

126.      Upon information and belief, Defendant Wellpath, LLC developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in the jail, which caused the violation of Plaintiff's rights.

127.      Plaintiff sustained physical harm, mental anguish, suffering and damages as a result of Defendants Wellpath, LLC and UG policies, customs and practices.

128.      Relief:

   a.   Enter judgment in favor of Plaintiff and against Defendants UG, WyCoSo and Wellpath, LLC.

   b.   Award Plaintiff compensatory damages against Defendant UG and damages against Defendants WyCoSo and Wellpath, LLC for their violations of Plaintiff's constitutional rights under color of state law;

   c.   Award any other further relief as the Court deems just and proper.

## **ALL COUNTS**

129.    Relief:

    a.  Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. 1988

       and any other applicable provisions of law;

    b.  For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

130.    Plaintiff hereby demands a jury trial on all counts triable by jury in this action.

Respectfully submitted,

*/s/ Matthew Charles Schlobohm*

Matthew Schlobohm

8128 E. 74th Street

Kansas City, MO 64133

816-277-9821

matthew.schlobohm@gmail.com

PRO SE PLAINTIFF

DATED: AUGUST 14, 2023