| Wyandotte County Sheriff's Office<br>Detention Center Standard Operating Procedures | | Number: | F-115 |
|---|---|---|---|
| **Subject:** Inmate Mail | | **References:**<br>*Jackson, et al. v. Ash*, No. 13-CV-2504 EFM/JPO<br>U.S. District Court for the District of Kansas | |
| **Section:** Inmate Rights, Privileges, Services, and Programs | | | |
| **Effective Date:** 10-08-08 | **Revision Date:** 11-24-14 | **Date of Last Review:** 11-24-14 | |
| **Reviewed By:** | Warden | | |
| **Approved By:** | Sheriff of Wyandotte County | | |

## I. POLICY

A.   The Wyandotte County Sheriff encourages correspondence that is directed to socially useful goals. The Warden shall establish correspondence procedures for inmates in the facility, as authorized and suggested in this policy.

B.   The Wyandotte County Sheriff's Office conducts mail distribution services to inmates and staff during normal business hours. The Sheriff's Office mailroom receives and delivers mail in accordance with local policy and regulations.

## II. DEFINITIONS

The following terms as used in the facility regarding Inmate mail:

A.   **"Envelope Correspondence"** means a letter enclosed in an envelope. Envelope correspondence also may include paperwork, newspaper clippings, photographs, drawings, or other items to the extent permitted by Jail policy. Envelope correspondence does not include correspondence between detainees in the Detention Center or with detainees in Juvenile Detention.

B.   **"Privileged"** describes a piece of correspondence that is sent to or from attorneys, the courts, officials of the confining authority, state or local chief executive officers, administrators of grievance systems, members of the paroling authority, or public officials.

C.   **"Non-Privileged"** describes all correspondence that is not Privileged.

D.   **"Indigent Inmate"** refers to a Jail inmate who has no funds ($0.00) in his or her inmate account that may be used for the purchase of commissary items, at any given time.

E. **"Writing Materials"** means a writing instrument (e.g., pen or pencil) approved by the Jail, and

1. For every piece of Envelope Correspondence, also one (1) No. 10 sized envelope of any color, one (1) piece of paper measuring at least 7.25" wide by at least 10.5" tall, and postage sufficient for mailing a one ounce Envelope Correspondence via First Class U.S. Mail (The Defendant Sheriff will provide prepaid postage to the inmates or affix the postage to the correspondence after receiving it from the inmate for mailing); or

2. For every Postcard, one (1) Postcard, and postage sufficient for mailing a Postcard via First Class U. S. Mail (The Sheriff will provide postage to the inmates or affix the postage to the correspondence after receiving it from the inmate for mailing).

## III. GENERAL CORRESPONDENCE

1. **Inmates May Send Letters**. Inmates are not prohibited from mailing Non-Privileged Envelope Correspondence to correspondents outside the Jail, except as set forth in Article III, paragraph D (9) and Article XI as read herein.

2. **Inmates May Receive Letters**. Inmates are not restricted from receiving Non-Privileged Envelope Correspondence from correspondents outside the Jail, except as set forth in Article III, paragraph D (9) and Article IX as read herein.

3. **Provision of Writing Material to Indigent Inmates**. Inmates will be provided Indigent Inmate with sufficient Writing Materials so that the Inmate may send at least two (2) pieces of Envelope Correspondence, per week, at no expense to the Inmate.

4. **Provision of Legal Writing Materials to Indigent Inmates**. Indigent Inmates, upon request, with sufficient Writing Materials so that the Indigent Inmate may send at least two (2) pieces of Privileged Envelope Correspondence, per week, at no expense to the Inmate.

5. **No Volume Restrictions on Mail**. The facility will not restrict the number of pieces of Envelope Correspondence or Postcards that a Jail inmate can send

or receive unless there is Jail inmate can send or receive unless there is clear evidence that such restriction is necessary for the safety of inmates, staff or the public or for facility order or security. The facility may restrict the number of pieces of Envelope Correspondence or Postcards that a Jail inmate may keep in his or her cell.

6. **Letter Length Restrictions**. Inmate mail will not be censored or restricted to the number of pieces of Envelope Correspondence or Postcards a Jail inmate can send or receive; however, inmate mail can be limited the length of each such piece of Envelope Correspondence, incoming or outgoing, to one (1) piece of paper, front and back, measuring at least 7.25" wide by at least 10/5" tall.

B.  Sheriff's personnel shall open and inspect all incoming general correspondence. Incoming general correspondence may be read as frequently as deemed necessary to maintain safety, security, custody, and care.

C.  Except for "Privileged mail," outgoing mail from an inmate may not be sealed by the inmate and may be read and inspected by staff.

D.  Mail Monitoring. The Sheriff establishes procedures for monitoring incoming and outgoing mail. The facility may wish to give closer scrutiny to incoming and outgoing mail of inmates, for example, who:

1. Participated in criminal activity of a sophisticated nature.

2. Committed crimes that involved mail or fraudulent schemes.

3. Are considered escape risks.

4. Present management problems (i.e., interference/disruption of the orderly running of the institution).

5. The staff member designated to supervise correspondence may keep a list of such inmates. Monitoring procedures may not interfere with mail handling.

6. Reading and Inspection. As states in this section, all incoming general correspondence and outgoing mail

(except "Privileged mail") is subject to random reading by correctional staff. The objectives of reading mail differ from the objectives of inspection. For inspection (to which all incoming general correspondence is subjected), the objective is primarily to detect contraband. The random reading of mail is intended to reveal, for example, escape plots, plans to commit illegal acts, plans to violate institution rules, or other security concerns.

7. Disclosure. When reading correspondence, a staff member may incidentally learn information about the private lives of inmates or their correspondents. Wyandotte County staff must be sensitive to the fact that most information in correspondence is private, and must be handled discreetly. Unless there is a legitimate correctional concern relating to security, safety, orderly running of the institution, criminal activity, or inmate rehabilitation, the content of reviewed correspondence should not be revealed to any other person.

8. The Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.

9. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains any of the following:

    (a) Matter which is non-mailable under law or postal regulations;

    (b) Matter which depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption; This includes any printed material individually identified as placing that inmate, another inmate, or staff at risk of assault or other safety concerns.

    (c) Information of escape plots, of plans to commit illegal activities, or to violate facility rules or guidelines;

    (d) Threats, extortion, obscenity, or gratuitous profanity;

    (e) Sexually explicit material (for example, personal photographs) which by its nature or content poses a

threat to an individual's personal safety or security, or to institution good order; or nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present a special concern for personal safety, security, and good order. This is particularly true when the subject is an inmate's relative, friend, or acquaintance. For these reasons, ordinarily an inmate is not permitted to receive through the mail a personal photograph in which the subject is nude, displays genitalia or female breasts, or when the photo depicts sexual suggestive acts such as intercourse, fellatio, or sodomy. The exclusion of this or similar materials is determined by whether it would be detrimental to an individual's safety or security, or to institution good order, if it were in the inmate's possession.

(f) Contraband. (A package received without prior authorization by the Warden is considered to be contraband).

(g) Distribution. Multiple copies of printed materials intended for inmate distribution and third-party mailing are also considered contraband.

## IV. RETURNED MAIL

A. Staff shall open and inspect for contraband all undelivered mail returned to an institution by the Post Office before returning it to the inmate. The purpose of this inspection is to determine if the content originated with the inmate sender identified on the letter or package; to prevent the transmission of material, substances, and property which an inmate is not permitted to possess in the institution; and to determine that the mail was not opened or tampered with before its return to the institution. Any re-mailing is at the inmate's expense. Any returned mail qualifying as "privileged mail" is opened and inspected for contraband in the inmate's presence.

B. Postage sold by Commissary. The inmate commissary must have available stamped envelopes to allow mailing of one piece of paper (7.25" wide by at least 10.5' tall) letter, with writing on the front and back, in excess of 1 ounce, but not requiring an additional first-class stamp.

C. Inmate Possession of Stamped Envelopes. The Warden issues local guidelines, limiting an inmate's possession of stamped envelopes at one time to no more than 30 (denomination for first-class, domestic, 1-ounce mailing), or the equivalent. The Warden may authorize possession of additional

stamped envelopes to a specified amount in excess of this limit. The stamped envelopes are to be maintained by the inmate in the same manner the commissary items and inmate property are sold or in the manner provided by the housing Deputy.

## VI. LEGAL CORRESPONDENCE OR PRIVILEGED MAIL

A. Staff mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. Staff will develop a master log containing the above information. The inmate may be requested (but not required) to sign the log, indicating receipt of the legal mail. If the inmate refuses, staff will note this in the log.

B. The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "**Privileged Mail – Open only in the presence of the inmate**".

C. Grounds for the limitation or denial of an attorney's correspondence rights or privileges are stated in this regulation. If such action is taken, the Warden shall give written notice to the attorney and the inmate affected.

## VII. PRIVILEGED MAIL

A. The Warden shall open incoming privileged mail only in the presence of the inmate for inspection for physical contraband and the qualification of an enclosures as privileged mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "**Privileged Mail – Open only in the presence of the inmate**". Incoming mail meeting these requirements must be treated per this rule. The Warden may, however, treat incoming mail that does not meet all requirements for privileged mail handling in the same fashion as privileged mail, including opening it in the inmate's presence and inspecting it only for contraband. For example, mail from the chambers of a Federal judge or from a Member of Congress should be given special handling even if it does not have a special mail marking on the envelope. Similarly, mail from an adequately identified sender that contains markings similar to the phrase.

B. "**Privileged Mail – Open only in the presence of the inmate**" may be given special handling.

C. Examples of similar markings include "**Attorney-Client – Open only in the presence of the inmate**" and "**Legal Mail – Open only in the presence of the inmate**".

D. In the absence of either adequate identification or the "Privileged mail" marking indicated in paragraph (A) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.

E. Except as provided for in paragraph of this section, outgoing privileged mail may be sealed by the inmate and is not subject to inspection.

F. Privileged mail may be screened in accordance with the provisions of this section when the privileged mail is being sent by an inmate who has been placed on restricted privileged status.

G. An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Sheriff and counsel, documents in writing that the privileged mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has previously used special mail to threaten physical harm to a recipient).

H. The Warden shall notify the inmate in writing of the reason the inmate is being placed on restricted privileged mail status.

I. An inmate on restricted privileged mail status must present all materials and packaging intended to be sent as privileged mail to staff for inspection. Staff shall inspect the privileged mail material and packaging, in the presence of the inmate, for contraband. If the intended recipient of the privileged mail has son requested, staff may read the privileged mail for the purpose of verifying that the privileged mail does not contain a threat of physical harm. Upon completion of the inspection, staff shall return the privileged mail material to the inmate if the material does not contain contraband or contain a threat of physical harm to the intended recipient. The inmate must then seal the privileged mail material in the presence of staff and immediately give the sealed privileged mail material to the observing staff for delivery. Privileged mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity. Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the material was forwarded to the appropriate law enforcement entity.

J. The Warden shall review an inmate's restricted privileged mail status at least once every 30 days. The inmate is to be notified of the results of this review. An inmate may be removed from restricted privileged mail status if the Warden determines, with the concurrence of the Sheriff and counsel, that the

      privileged mail does not threaten or pose a threat of physical harm to the intended recipient.

K. An inmate on restricted mail status may seek review of the restriction through the inmate complan form (ICF).

L. Except for privileged mail processed in accordance with the section, staff shall stamp the following statement directly on the back side of the inmate's outgoing privileged mail:

> **"The enclosed letter was processed through privileged mailing procedures for forwarding to you. The letter has neither been open nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."**

M. The stamp includes the above statement, the name and address of the Sheriff's Office and space for the date.

## VII. CORRESPONDENCE BETWEEN INMATES

A. An inmate may or may not be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family or is a party or witness in a legal action in which both inmates are involved. Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence based on the safety, security, custody, and care of the facility.

## IX. RESTRICTED GENERAL CORRESPONDENCE

A. The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of safety and security.

B. Determining factors include the inmate's:

C. Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;

D. Being a security risk;

E. Threatening a government official; or

F. Having committed an offense involving mail.

G. The Warden may limit to a reasonable number of persons on the approved restricted general correspondence list of an inmate.

H. A recommendation to place an inmate on restricted correspondence is made by Jail Administration during the inmate's review or by Disciplinary Hearing Officer when restricted correspondence is required by an infraction of an institutional rule.

I. The Warden shall use one of the following procedures before placing an inmate on restricted general correspondence.

J. Where the restriction will be based upon an incident report, procedures must be followed in accordance with inmate disciplinary regulations.

K. The Warden shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general correspondence.

L. Shall give the inmate the opportunity to respond to classification or change in classification; the inmate has the option to respond orally or to submit written information or both;

M. Shall notify the inmate of the decision and the reasons and shall advise the inmate that the inmate may appeal the decision.

X. **RESTRICTED GENERAL CORRESPONDENCE PROCEDURE**

   A. When an inmate is placed on restricted general correspondence, the inmate may:

      1. Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondent is involved in a violation of correspondence regulations, or would be a threat to the security or good order of the institution;

      2. The word "spouse" includes a common-law relationship which has previously been established by the state of Kansas.

      3. Request other persons also to be placed on the approved correspondence list, subject to investigation, evaluation, and approval by the Warden; with prior approval, the inmate may write to a proposed correspondence to obtain a release authorizing an investigation; and

4. Correspond with former business associates, unless it appears to the Warden that the proposed correspondent would be a threat to the security or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity. Correspondence with former business associates is limited to social matters.

## XI. NOTIFICATION OF REJECTIONS

A. When correspondence is rejected, the Warden shall notify the sender in writing of the rejection and the reasons for the rejection. The Warden shall also give notice that the sender may appeal the rejection. The Warden shall also notify an inmate of the rejection of any letter addressed to that inmate, along with the reasons for the rejection of any letter addressed to that inmate, along with the reasons for the rejection and shall notify the inmate of the right to appeal the rejection. The Warden shall refer an appeal to an official other than the one who originally disapproved the correspondence. The Warden shall return rejected correspondence to the sender unless the correspondence includes plans for or discussion of commission of a crime or evidence of a crime, in which case there is no need to return the correspondence or give notice of the rejection, and the correspondence should be referred to appropriate law enforcement authorities. Also, contraband need not be returned to the sender.