IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MATTHEW CHARLES SCHLOBOHM,

    Plaintiff,

    v.                               CASE NO.  23-3014-JWL

DONALD ASH, et al.,

    Defendants.

MEMORANDUM AND ORDER
TO SHOW CAUSE

Plaintiff brings this pro se case under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff's claims arose during his confinement as a pre-trial detainee at the Wyandotte County Detention Center in Kansas City, Kansas ("WCDC").

The Court entered a Memorandum and Order to Show Cause (Doc. 9) ("MOSC") on January 20, 2023, giving Plaintiff an opportunity to show good cause why his claims should not be dismissed or to file an amended complaint addressing the deficiencies.  After requesting and receiving six (6) extensions of time, Plaintiff filed his First Amended Complaint (Doc. 48) on August 14, 2023.  The Court entered a Memorandum and Order ("M&O") (Doc. 49) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the WCDC.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  The Court ordered WCDC officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 49, at 2.)   The *Martinez* Report (Docs. 60, 66, and 67) (the "Report") has now been filed, and Plaintiff's First Amended

Complaint is before the Court for screening in light of the Report.  The Court's screening standards are set forth in the MOSC.

## I.  Nature of the Matter before the Court

Plaintiff's claims relate to the conditions of his confinement and the medical care provided at the WCDC.  He alleges that the WCDC was overcrowded, understaffed, and filthy.  He states that he was locked down 24 hours a day.  Plaintiff further alleges that despite having multiple serious conditions, he received none of his prescribed medication while at the WCDC.  He asserts that he was refused a COVID-19 vaccination, contracted COVID-19, became very ill, and did not receive adequate treatment.  Plaintiff claims that the defendants interfered with his legal mail and denied him access to the courts.

Plaintiff names the following as defendants:  the Unified Government of Wyandotte County ("UG"); the Wyandotte County Sheriff's Office ("WCSO"); Wellpath LLC; Dr. Danny Stanton; Esmeralda Wilson, Programs Supervisor at the WCDC; Deputy Meador; Karina Purcell, R.N.; D. Dull, Health Services Administrator; Miss Hill, Mail Clerk; Registered Nurse #1; Captain Taylor; and Officer Bond.  Plaintiff seeks compensatory and punitive damages.

## II.  The *Martinez* Report

The Report (Doc. 60) states that Plaintiff was detained at the WCDC for 45 days, from December 5, 2022, to January 19, 2023.  (Doc. 60-1, at 1, 5.)  Medical records and affidavits attached to the Report are referenced in the following Discussion.

## III.  DISCUSSION

Plaintiff brings four (4) counts in the First Amended Complaint.  Each is subject to dismissal for the reasons explained below.

**A. Count I: Prison Conditions**

Plaintiff alleges that Defendants UG and WCSO failed to provide Plaintiff with sanitary conditions at the WCDC.[1]  Plaintiff specifically alleges that the WCDC was overcrowded, was not adequately staffed, did not prevent the spread of COVID-19, had "plumbing concerns" leading to human feces being present throughout the facility, and kept detainees on 24-hour lockdown.  (Doc. 48, at 22-23.)

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).[2]  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).

In order to state a claim of cruel and unusual punishment, the plaintiff has to establish "deliberate indifference."  As noted, the deliberate indifference standard includes both an objective

---

[1]     Municipal liability is discussed below at Para. III.D..  In addition, the WCSO is not a proper defendant, as also explained below.

[2]     While the conditions under which a convicted prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir.2005). To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Martinez*, 430 F.3d at 1304. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer*, 511 U.S. at 832.

With regard to the subjective component, the plaintiff must prove that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S. at 834, 837 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *McBride*, 240 F.3d at 1291; *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks."). It is not enough to establish that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 837–38; *Barney*, 143 F.3d at 1310.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.*; *Barney*, 143 F.3d 1311. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations. . . may meet the standard despite a shorter duration." *Id.*

On the other hand, the Court is mindful of the Supreme Court's mandate that the judicial branch accord deference to prison authorities in the running of prisons and jails, particularly when a state prison system is involved. *See Turner v. Safley*, 482 U.S. 78, 85 (1987). "[M]aintaining internal security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). In addition, the fact that the conditions of pretrial detention may interfere with a person's desire to live as comfortably as possible and with as little restraint as possible dose not convert the conditions in the jail facility to "punishment" within the constitutional sense. *Id.* at 534.

Plaintiff complains that the WCDC was overcrowded and did not have adequate staff. "Overcrowding itself is not an unconstitutional condition, and becomes actionable only if it leads to deprivation of food, proper sanitation, or medical care, or where it is accompanied by dangerous conditions." *Rhodes*, 452 U.S. at 349. Courts have held that there is no constitutional violation even for triple-celling pretrial detainees. *See e.g., Rhodes*, 452 U.S. at 348 (holding that even though a jail housed 38% more inmates than its design capacity, "[t]he double celling made necessary by the unanticipated increase in prison population" did not violate the Eighth Amendment because no deprivation of "essential food, medical care, or sanitation" occurred); *Hubbard v. Taylor*, 538 F.3d 229 (3rd Cir. 2008) (triple-celling was rationally related to prison officials' legitimate government interest); *North v. White*, 152 F. App'x 111 (3rd Cir. 2005) (finding no Eighth Amendment violation where, due to a temporary influx of inmates, facility resorted to triple-celling of one-third of inmates for a month, since facility was otherwise well maintained; and ventilation, light, sanitation, and food met applicable minimal standards). Plaintiff must allege facts showing some adverse effects from being housed with a cellmate in a

cell allegedly intended for a single detainee.  *See Dittmeyer v. Whetsel*, 91 F. App'x 111, 119 (10th Cir. 2004) (plaintiff did not show how overcrowding injured him).

Plaintiff alleges that feces were smeared in locations throughout the WCDC.  (Doc. 48, at 11.)  To the extent that a claim is based on the smell of feces or presence of suspected smears of feces without more, Plaintiff's failure to cite evidence of physical injury to him from this condition precludes the claim.  *See Dickinson v. New Mexico Behavioral Health Institute*, 335 F. App'x 729, 734 (10th Cir. 2009) (where plaintiff alleged unit was unsanitary and smelled of urine and feces, he could not recover compensatory damages absent proof of physical injury from the conditions); *cf. McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001).  Also, the Report indicates that at least when Plaintiff was in the general population, he had access to cleaning supplies and could clean at his discretion.  (Doc. 60-2, at 2.)

Plaintiff's complaint about the failure to stop the spread of COVID-19 is more properly considered a failure to protect claim.  "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'"  *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Requena*, 893 F.3d at 1214 (citation omitted).

Plaintiff has failed to show that the defendants disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Although Plaintiff generally alleges that there were not sufficient measures to prevent the spread of COVID-19, he has not alleged any facts that, if true, would show that the defendants drew the inference that a substantial risk of serious harm to Plaintiff existed and that they then disregarded that risk.

Plaintiff has failed to show that any defendant was deliberately indifferent in subjecting him to a greater risk of contracting COVID-19.  Plaintiff's claims suggest, at most, negligence. Claims under § 1983 may not be predicated on mere negligence. *See Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability"). A claim of simple negligence must be brought in state rather than federal court as it is not an adequate basis for claiming cruel and unusual punishment under the Eighth Amendment.

Plaintiff also claims that he and other detainees were on 24-hour lockdown.  The Supreme Court has held that "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivations of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Pretrial detainees, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* (citations omitted).  "A person lawfully committed to pretrial detention has not been adjudged guilty of any crime . . . [and] has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Id.* (citations omitted).  The government may "detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility

so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536–37.

To determine when restrictions pass, as a matter of law, from constitutionally acceptable to constitutionally impermissible, a court must ask two questions. *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013). "First, we must ask whether an 'expressed intent to punish on the part of detention facility officials' exists" and "[i]f so, liability may attach. If not, plaintiff may still prove unconstitutional punishment by showing the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Id.* (citing *Bell*, 441 U.S. at 538–39).

The Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell*, 441 U.S. at 540. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id*. "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*. The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540, n.23 (citations omitted).

Plaintiff's allegations are not clear, but he seems to allege that all or a significant portion of inmates were locked down. ("[W]e were on 24 hour-a-day lockdown for the entirety of my

detention," Doc. 48, at 14.)  He also alleges that there was a COVID outbreak and insufficient staff.  Plaintiff does not allege that the restrictions were intended to punish and were not reasonably related to the institution's interest in maintaining jail security.

Plaintiff should show good cause why Count I should not be dismissed for failure to state a claim.

## B.  Count II: Eighth and Fourteenth Amendment – Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that "all Defendants acted in a coordinated, conspiratorial manner to cause direct and proximate irreparable harm to Plaintiff while being deliberately indifferent to his clearly serious medical needs." (Doc. 48, at 23.)  Plaintiff specifically alleges that despite being prescribed multiple medications by his physicians, at no point did Defendants provide his medication.  *Id*. at 24.  Elsewhere in the Complaint, Plaintiff complains about his treatment for COVID-19.

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Crowson v. Wash. Cty.*, 983 F.3d 1166, 1178 (10th Cir. 2020) (internal quotation marks and citation omitted). The two-part Eighth Amendment inquiry governs. *Id.* Objectively, the deprivation must be sufficiently serious to constitute a deprivation of a constitutional dimension; and subjectively, a prison official must know of and disregard an excessive risk to inmate health or safety.  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

Plaintiff was medically screened upon arrival at the WCDC on December 5, 2022.  During that screening, Plaintiff reported that he took Xarelto and Adderall.  (Doc. 60-1, at 7.)  He was also asked where he obtained his prescription medication, and he completed a medication verification form for Walgreen's/Express Scripts.  (Doc. 60-1, at 7.)  When Wellpath staff called Walgreen's and Express Scripts, staff was told that Plaintiff only had a current prescription for Adderall.  *Id.*

Adderall is not allowed at WCDC for security reasons.  (Doc. 60-1, at 1.)

Wellpath also sent a Release of Information form to the University of Kansas and the Sleep Disorders Institute on December 5, 2022, asking for Plaintiff's most recent medication list.  (Doc. 60-1, at 13, 14.)  The information received back did not reflect Xarelto or any additional current prescriptions. (Doc. 66, at 186.)

Plaintiff received an initial mental health assessment on December 6, 2022.  (Doc. 66, at 61.)  He reported that he was prescribed Xywav, Adderall, Xanax, and Zofran.  *Id.* at 62.  Plaintiff was placed on the list to see the psychiatrist.  He was seen by the psychiatrist on January 11, 2023. (Doc. 66, at 78-82.)  Plaintiff requested Xanax and Adderall at that point; the doctor prescribed Remeron.  *Id.* at 81.

Plaintiff's medical records show that Adderall was the only current prescription Plaintiff had upon arrival at WCDC.  Adderall is not allowed at the WCDC.  While Plaintiff had to wait over a month to see the psychiatrist, in situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"  *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff has not alleged substantial harm resulting from the delayed psychiatric visit. Plaintiff fails to state a claim for deliberate indifference based on the medication issue.

As for treatment for COVID, Plaintiff's medical records show he reported symptoms on December 20, 2022, and tested positive on December 21, 2022.  (Doc. 66, at 8.)  The doctor entered the following orders when Plaintiff reported symptoms on December 20:  Isolation for at least 10 days; face mask; monitor pulse, temperature, oxygen, and symptoms 2 x day until afebrile for 72

hours; Tylenol for fever; Vit D; zinc; guaifenesin for cough and congestion; Imodium for diarrhea; and Zofran for vomiting. (Doc. 66, at 151.) According to the records, Plaintiff never had a temperature of over 98.6 degrees.

Plaintiff believes that he should have received additional or different treatment for COVID-19. An apparent disagreement over course of treatment or diagnosis does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010); *Dopp v. Larimer*, 731 F. App'x 748, 752 (10th Cir. 2018). "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). A difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel-and-unusual punishment. *See, e.g., Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Self*, 439 F.3d at 1231; *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). "[T]he medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023). "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id.* (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id.* "Instead, a court may need to determine whether there was the functional

11

equivalent of a complete denial of care in light of the specific circumstances." *Id.* (citations omitted).

The Court finds that Plaintiff's medical records do not show that he received the functional equivalent of a complete denial of care. *See Lucas*, 58 F.4th at 1139. While Plaintiff clearly believes that something more should or could have been done, that is merely a disagreement with the course of treatment and does not rise to the level of deliberate indifference. *See Taylor v. Ortiz*, 410 F. App'x 76, 79 (10th Cir. 2010) (prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation); *Levy v. Kafka*, 6 App'x 822, 823 (10th Cir. 2001) (affirming dismissal of § 1983 action when the "materials submitted . . . demonstrate[d] the availability of medical care" and the plaintiff merely asserted that "different treatment [was] required to alleviate his pain and suffering").

Plaintiff is given the opportunity to show cause why his claim of deliberate indifference to serious medical needs should not be dismissed.

## C.  Count III: Illegal Search and Seizure of Legal Mail; Denial of Access to the Courts and Legal Assistance

Plaintiff brings this count against Defendants Hill, Wilson, the WCSO, and the UG. *Id.* at 26. He alleges that the defendants refused to mail his Complaint in this action; opened and photocopied the Complaint; and deprived him of his right to meaningful access to a law library by putting him in solitary confinement. *Id.*

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of

standing."). An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53. He may allege actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. *Id*. at 350, 353.

Plaintiff alleges that "Defendants Wilson and Hill opened my sealed envelope that was clearly labeled as 'legal mail' and properly addressed to this Court on approximately January 4, 2023." (Doc. 48, at 19.) He then claims that his legal mail was not mailed by Defendants until he was released from the WCDC. *Id*. Plaintiff was released on January 19, 2023. (Doc. 67-3, at 1.)

Plaintiff's account of events is simply not accurate. Plaintiff's original Complaint was dated by Plaintiff as January 9, 2023. (Doc. 1, at 1.) Plaintiff used seven (7) envelopes to mail the Complaint and exhibits to the Court. One envelope has a note on the back in Plaintiff's handwriting stating "Mailed on Thursday, Jan. 12, 2023." (Doc. 1-2, at 2.) The other six (6) envelopes state in Plaintiff's handwriting that they were mailed on January 9, 2023. (Doc. 1-2, at 4, 6, 8, 10, 12, and 14.) The envelopes are all post-marked January 12, 2023. *Id*. They were received by the Court on January 17, 2023, and filed on that date. This indicates that some of Plaintiff's mail was delayed at most by three (3) days, from January 9 to January 12. A delay of three days does not amount to a constitutional violation.

Plaintiff also alleges that his Complaint was opened by WCDC staff. "It is settled that an inmate's legal mail may be opened by prison officials only in the presence of the inmate." *Bledsoe v. Biery*, 814 F. Supp. 58, 59 (D. Kan. Feb. 11, 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974)). "The privileged treatment accorded legal mail stems from its importance in protecting inmates' right of access to the courts." *Id.*

13

However, the Tenth Circuit has held that one "isolated incident, without any evidence of improper motive or resulting interference with [a prisoner's] right to counsel or to access the courts, does not give rise to a constitutional violation." *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Salazar v. Whisker*, 804 F. App'x 1007, 1007 (10th Cir. May 8, 2020) (unpublished order and judgment) ("[A]n isolated incident of opening a prisoner's legal mail outside the prisoner's presence does not violate the Constitution.").

The First Amended Complaint identifies only a single instance when someone opened Plaintiff's legal mail outside of his presence, and it does not include alleged facts that show that the defendants had an improper motive for opening and reading Plaintiff's legal mail outside of his presence. Because the Complaint, even liberally construed, alleges only an isolated incident when Defendants opened Plaintiff's legal mail outside of his presence, it does not state a plausible claim for relief under § 1983.

Plaintiff also complains that Defendants deprived him of his right to meaningful access to a law library by putting him in solitary confinement. Plaintiff states that after he attempted to file this lawsuit, he was moved "to solitary confinement for no legitimate penological reason." (Doc. 48, at 20.) He asserts that this was "an obvious attempt to prevent [him] from receiving any type of help from any court or legal assistance of any kind . . . and to prevent my access to the law library and further attempts to access the courts." *Id*.

Plaintiff does not provide any dates, but he indicates that he mailed his Complaint on January 9, 2023. According to the Inmate Cell History provided with the Report, Plaintiff was moved to cell I 05 1 on January 13, 2023. (Doc. 67-3, at 1.) This cell is on I-Pod, the medical observation pod. As explained above, Plaintiff's Complaint was postmarked January 12, 2023. Therefore, the move to the medical observation cell could not have been intended to interfere with

Plaintiff filing his Complaint.  The Report also includes an exhibit showing that Plaintiff was issued a tablet on December 14, 2022, which he retained until he was moved to I-pod.  (Doc. 67-8, at 1, 4; 67-1, at 4.)  The tablet included the ability to do legal research.  (Doc. 67-1, at 3.)  While on I-Pod, Plaintiff was also offered recreation time when he could have accessed the online law library.  (Doc. 67-1, at 4.)

Plaintiff is directed to show good cause why this count should not be dismissed for failure to state a claim.

### D.  Count IV: Supervisory and Municipal Liability: Failure to Supervise and Train

Plaintiff alleges that Defendant Meador violated his constitutional rights while acting under the supervision of the UG and WCSO.  (Doc. 48, at 28.)  He further alleges that the UG and WCSO "have final policymaking authority" and "developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in the jail."  *Id.*  Plaintiff also asserts that Wellpath developed and maintained policies exhibiting deliberate indifference.  *Id.*

First of all, the WCSO is not a suable entity under § 1983.  *See e.g. Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("The 'City of Denver Police Department' is not a separate suable entity."); *see also Moore v. Diggins*, 633 F. App'x 672, 677 (10th Cir. 2015) (holding the Denver Sheriff's Department "is not a suable entity under § 1983"); *Faulkner v. Correct Care Sols.*, No. 13-3127-SAC, 2013 WL 5499815, at *4 (D. Kan. Oct. 3, 2013) (finding the Johnson County Sheriff's Department is not a suable entity); *Burnett v. McPherson Cty. Sheriff's Dep't*, No. 07-3038-SAC, 2008 WL 161681, at *3 (D. Kan. Jan. 16, 2008) (McPherson County Sheriff's Department is not a person within the meaning of §1983 and is not a suable entity); *Williams v. Clay Cty. Police Dep't*, No. 10-CV-2658-EFM, 2011 WL 2294257, at *3 (D. Kan. June 8, 2011),

*aff'd*, 442 F. App'x 396 (10th Cir. 2011) ("It is well established that under Kansas law, police departments lack the capacity to be sued."); *Pfuetze v. Kansas*, No. 10-1139-CM-GLR, 2010 WL 3892243, at *5 (D. Kan. Sept. 29, 2010) (Sedgwick County Sheriff's Department is not a legal entity amendable to suit). Therefore, the WCSO is subject to dismissal.

To impose § 1983 liability on the UG and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *see Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)). The Supreme Court explained that in *Monell* they decided "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989).

Plaintiff has pointed to no specific policy or deficiency in the training program used by the Sheriff or Wyandotte County and no causal link between any such inadequacy and the allegedly unconstitutional acts or inactions of the individual defendants. Plaintiff alleges only that the UG and WCSO "have final policymaking authority" and "developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in the jail." (Doc. 48, at 28.) His allegations are generalized and conclusory. Consequently, the UG is subject to dismissal.

Plaintiff also names Wellpath as a defendant. In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under

*Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted).  A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to  . . . § 1983 suits."  *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

Plaintiff has failed to state a claim against Wellpath regarding his medical care.  Plaintiff's allegation that Wellpath "developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in the jail" (Doc. 48, at 28) fails to show the type of policy warranting imposition of liability.  He has failed to allege a formal statement by the company or a persistent, well-settled practice.  Plaintiff's claims against Wellpath are subject to dismissal.

## IV.  Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims."  *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The

report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

## V. Motions

Also before the Court are two motions filed by Plaintiff. The first is titled "Motion for Reconsideration of its Previous Motion to Exercise Supplemental Jurisdiction" (Doc. 79). Plaintiff continues to seek recordings and additional evidence. Plaintiff provides no new arguments. The motion for reconsideration is denied.

The second motion filed by Plaintiff is titled "Motion for Extension of Time for All Pending Motions" (Doc. 81). The motion was filed on May 24, 2024, and Plaintiff sought an additional 21 days to file a response to the *Martinez* Report. Because Plaintiff now has until August 18, 2024, to respond to this Order and the Report, the motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **August 23, 2024,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's pending motions (Docs. 79 and 81) are **denied**.

**IT IS SO ORDERED.**

**Dated July 23, 2024, in Kansas City, Kansas.**

<u>S/   John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**